

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-24-2005

# USA v. Lin

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2054

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Lin" (2005). *2005 Decisions*. Paper 1146.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1146

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2054

UNITED STATES OF AMERICA

v.

CHANG PING LIN
a/k/a Lin Fung,

Chang Ping Lin,
Appellant

Appeal from the United States District Court
for the District of New Jersey
(Civ. No. 02-cr-00293)
District Judge: Jerome B. Simandle

Submitted Under Third Circuit LAR
November 12, 2004

Before: McKee, Chertoff,[*] *Circuit Judges*, Buckwalter,[**] *District Judge*

(Opinion filed: May 24, 2005)

OPINION

McKee, *Circuit Judge*

---

[*] Judge Chertoff heard oral argument in this case but resigned prior to the time the opinion was filed. The opinion is filed by a quorum of the panel. 28 U.S.C. § 46(d).

[**] Honorable Ronald L. Buckwalter, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Chang Pin Lin appeals the judgement of conviction and sentence imposed following his conviction for kidnaping, extortion, and related charges. For the reasons that follow, we will affirm the judgment of conviction, but remand for resentencing pursuant to the Supreme Court's recent decision in *United States v. Booker,* 543 U.S. ___ , 125 S. Ct. 738 (2005).

**I.**[1]

In his brief, Lin challenges the district court's suppression rulings, and the court's decision to admit evidence of uncharged "bad acts" under Fed. R. Evid. 404(b).

**A. The Warrantless Search of Lin's Apartment.**

Lin argues that the warrantless search of his living quarters was unconstitutional and that evidence seized from there should therefore have been suppressed. The Fourth Amendment generally prohibits warrantless searches. However, a search pursuant to a valid consent is "reasonable" under the Fourth Amendment and therefore a warrant is not required. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Generally, landlords can not consent to the warrantless search of their tenants' quarters. *Chapman v. United States*, 365 U.S. 610, 616-617 (1961). However, where a landlord and tenant share common authority and control over a leased premises, the landlord has the authority to consent to a search. *United States v. Matlock*, 415 U.S. 164, 171 (1974).

---

[1] Inasmuch as we are writing primarily for the parties who are familiar with this case, we need not discuss the factual or procedural background of this appeal.

Here, the district court concluded that Lin's landlord had both actual and apparent authority to consent to the search of Lin's living area.[2] In doing so, the court analyzed Lin's expectation of privacy in the context of his relationship with the landlord. and the circumstances of the living space. (App. 13).[3] We agree that the record supports the district court's conclusion that Lin and his landlord maintained a "family style" living arrangement, and that Lin had shared access to Lin's living quarters. App. 14-16. Accordingly the district court did not err in concluding that the landlord had *actual authority* to consent to the search.[4]

## B. Motion to Suppress Statements

Lin also argues that the district court erred in not suppressing custodial statements he made to the Atlantic City Police. He argues that "the record fails to establish a knowing and intelligent waiver of *Miranda* rights, given [his] inability to speak English . . . ." Appellant's Br. at 22.[5] According to Lin, the court erred because it only analyzed

---

[2] As used herein, "landlord" refers to Diep and Nguyen, jointly and severally.

[3] Since the pages of the portion of the appendix attached to Appellant's Brief are not numbered sequentially with the "stand alone" appendix, we will cite the former as "App." and the latter as "Sup. App."

[4] We also agree that the record supports a finding that the landlord's facility with English was sufficient to allow him to consent to the search. The district court also found that the landlord had *apparent authority* to consent and that Special Agent Kane had a reasonable belief that the landlord possessed sufficient authority to consent. App. 20-21. Although the record readily supports that conclusion, we need not discuss it given our conclusion that the government established actual authority.

[5] *See Miranda v. Arizona*, 384 U.S. 486 (1966).

3

whether he was coerced into giving a statement, and did not examine whether he sufficiently understood the warnings to tender a knowing waiver under *Miranda*.

The government has the burden of proving by a preponderance of the evidence that a defendant was advised of his/her rights and voluntarily and knowingly waived them. *Lego v. Twomey*, 404 U.S. 477 (1972). Here, the evidence established that Detective Bennett had used the "Language Line" at least ten times before taking Lin's statement. Bennett logically concluded that Lin spoke Mandarin because Lin had communicated with his victim - Feng - who spoke Mandarin. After assuring himself that Lin understood the interpreter, Bennett read the Miranda warnings one by one from an interrogation form. Lin indicated that he understood each of the rights at the conclusion of each translated warning. Lin's responses were appropriate to the questions Bennett asked, and nothing about the interaction suggested that Lin was having trouble understanding. As the district court concluded, "all indications to any objective observer were that the defendant understood what Detective Bennett indicated to him, including specifically his Miranda warnings." App. 26. We agree.

That conclusion is reinforced by the fact that Lin did terminate the questioning shortly after Detective Bennett began. Although Lin argues this shows he did not initially understand his rights, we think it shows that he did understand them and voluntarily decided to exercise them shortly after the interrogation began. Although Lin did not raise the issue of voluntariness in the district court, the court found that Lin's waiver and his

4

decision to speak was voluntary. Sup. App. 1054.  Since he did not raise the issue in the district court, we review it only for plain error. *United States v. Sriyuth*, 98 F.3d 739, 748-49 (3d. Cir. 1996).  *See* Fed. R. Crim. P. 52(b) ("[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

In the district court, Lin claimed that "during the custodial interrogation, . . . he was not properly advised of his constitutional rights." Sup. App. 976.  In ruling from the bench, the district court noted that "[t]he defendant's affidavit never implies that he didn't understand the detective who was conducting the interrogation through the interpreter. The defendant also has not taken the position in his affidavit that his waiver of rights occurred involuntarily." App.  24. As noted above, the district nevertheless addressed the voluntariness of Lin's waiver.

In *United States v. Syme*, 276 F.3d 131, 143 FN4 (2002), we stated:

> Under the plain error standard, a reviewing court may reverse the district court "only if [it] finds that (1) an error was committed; (2) the error was plain, that is, 'clear' and 'obvious;' and (3) the error 'affected' [the defendant's] substantial rights. . . The burden is on the defendant to demonstrate that "plain error" occurred.

For reasons we have already discussed, we do not believe that the district court committed *any* error in rejecting Lin's claims under *Miranda*, let alone "plain error."

Lin also claims that the district court committed plain error by accepting a stipulation that the Language Line interpretation was admissible non-hearsay.  He asserts

5

that it was inadmissible hearsay because there was no basis for the stipulation to the accuracy and reliability of the translation. However, he has not satisfied his burden of establishing plain error, and can not do so by now launching an attack on the interpreter's resumé. *See* Appellant's Br. at 30-31.

The district court found that the Language Line interpreter was competent and not motivated by any bias or influence that would impact the accuracy of the translation. That finding is consistent with the record and Detective Bennett's observations of Lin's apparent understanding of the translation as explained above. We therefore affirm the district court's finding that the Language Line interpreter was competent and qualified and that he had no motive to inaccurately translate defendant's statements. *See* App. 40.

### C. Evidence of Conduct.

The government also moved in limine to admit various pieces of evidence as either outside the scope of the prohibition of Fed. R. Evid. 404(b) or admissible under that rule. Specifically, the government moved to admit testimony regarding the February 2001 loan from Lin to Feng, a series of IOUs found in Lin's wallet, and evidence of a stabbing incident unrelated to the instant charges.

On appeal, Lin only challenges the district court's decision to admit the three IOUs documenting loans unrelated to the charged extortionate conduct. The district court ruled the evidence admissible under Rule 404(b). The court concluded that it demonstrated that Lin was actually in the business of loaning money, and that its probative value

6

outweighed any prejudicial impact under Rule 403 because the transactions were not identified as evidence of extortion. Lin claims this was an abuse of discretion that was amplified by the district court's failure to give a limiting instruction as promised.

This claim is also reviewed for abuse of discretion. *United States v. Lopez*, 340 F. 3d 169, 171-72 (3d. Cir. 2003). Fed. R. Evid. 404(b) states in relevant part:

> Evidence of other crimes, . . . or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, . . . intent, . . . plan, [or] knowledge . . . .

Evidence that is properly admitted under Rule 404(b) must therefore be relevant to a proper purpose, and its probative value must outweigh the prejudice that is inherent in this kind of evidence. *United States v. Mastrangelo*, 172 F.3d 288, 294 (3d. Cir. 1999).

Although there are obvious dangers inherent in "bad acts" evidence admitted under Rule 404(b),[6] we do not believe the district court abused its discretion in admitting that evidence here. The government was attempting to prove that Lin did not lend money to Feng, his victim, out of a sense of personal friendship, but that Lin had a practice of lending money. The district court concluded that the IOUs were probative of the relationship between Feng and Lin, and that they buttressed Feng's testimony. App. 36.

---

[6] *See United States v. Morley*, 199 F.3d 129, 139 (3rd Cir. 1999) (noting "the adversarial tendency of the proponents of such evidence to be less than candid about their motives for offering evidence that suggests that a defendant's character is suspect ")

In addition, since the IOUs did not suggest that Lin was violent, the court reasoned that they were not unduly prejudicial given the significance of their probative value.

Lin quite correctly emphasizes the district court's failure to give a limiting instruction as promised when ruling the evidence admissible. Such an instruction should be given when requested. However, although the court stated that it would give the instruction, the defendant never requested that a limiting instruction be included in the court's charge. Before the charge was given, defense counsel told the court, "I read [the charge] last night and I'm satisfied with the Charge, Judge." Sup. App. 734. At the conclusion of the charge, defense counsel told the judge that he had no objection to the charge as given. Sup. App. 887. Accordingly, we must analyze the court's omission for plain error.

At trial, Detective Bennett merely confirmed that he recognized the IOUs, and the prosecutor then read the translation of each one. That translation included only the names of the people who owed Lin money, the dates of the transactions, and the amounts involved. Moreover, in his closing, the prosecutor did not refer to the IOUs or allude to them in a way that would suggest an inference about Lin's character. We therefore hold that the court neither abused its discretion, nor committed plain error, in admitting that evidence under Rule 404(b) without a limiting instruction.

**II.**

After Lin was sentenced, the Supreme Court decided *United States v. Booker*.

Briefly stated, "[t]he Court held that 18 U.S.C. § 3553(b)(1), the provision of the Sentencing Reform Act that makes the Guidelines mandatory, was [unconstitutional] and that it must be severed and excised [from the Guidelines]." *United States v. Ordaz*, 398 F.3d 236, 239 (3d. Cir. 2005).

Following that decision, Lin asked to be resentenced pursuant to *Booker* even though he had not previously challenged the legality of the Sentencing Guidelines. Since the district court viewed the Guidelines as mandatory when it decided upon an appropriate sentencing range, we will follow the practice we have adopted in the wake of *Booker* and remand for resentencing in accordance with that decision.

## III.

For the reasons set forth above, the judgment of conviction and sentence will be affirmed in part and reversed in part, the sentence will be vacated, and the matter will be remanded for resentencing in accordance with this Opinion.