

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## NO. PD-0493-09

---

**DOUGLAS MICHAEL HUBERT, Appellant**

**v.**

**THE STATE OF TEXAS**

---

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE THIRTEENTH COURT OF APPEALS
## NUECES COUNTY

---

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined. MEYERS, J., filed a dissenting opinion.

## O P I N I O N

In this case, the appellant's grandfather allowed the police to enter and search the appellant's bedroom in the house they shared. The question is whether the grandfather had actual authority to consent to the search of the bedroom and, failing that, whether the police could reasonably rely on his apparent authority to consent to the search. We hold that the grandfather had actual authority to consent to a search of the appellant's bedroom. Because we hold that the grandfather had actual authority, we need not address whether the apparent-

authority doctrine would validate his consent to a search of his grandson's room. We reverse the judgment of the court of appeals.

## FACTS AND BACKGROUND

In 2004, the appellant was convicted of felony driving while intoxicated and sentenced to seven years' imprisonment. He served a portion of this sentence before being released on parole. In September 2007, the appellant's grandfather, Myron Reed, informed the appellant's parole officer that the appellant had been driving without a license, had left the state, and was in possession of firearms—all violations of his parole conditions. Acting on this information, the appellant's parole officer, Aaron Garcia, issued a warrant for the appellant's arrest. Garcia forwarded the arrest warrant to Gilberto Casas, Jr., an officer with the Nueces County Constable's Office. After receiving the warrant, Casas went to the house that the appellant shared with Reed, accompanied by Officer Valverde. When they arrived at the house, the officers found the appellant on the porch. They arrested the appellant and placed him in their squad car before searching the entire house, including the appellant's bedroom. The officers found weapons and ammunition. The appellant was subsequently charged with unlawful possession of a firearm by a felon.[1]

The appellant filed a pre-trial motion to suppress the evidence, arguing that the search of his bedroom violated the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Section 9, of the Texas Constitution, and Article 38.23 of the

---

[1] TEX. PENAL CODE § 46.04.

Texas Code of Criminal Procedure.[2] At a hearing on the motion to suppress, Garcia testified that he had issued a blue warrant for the appellant after receiving a tip from Reed that the appellant had violated his parole conditions. Asked whether Reed was the owner of the home in which the appellant resided, Garcia replied, "That I'm aware of, yes ma'am." Officer Casas testified that he had executed the blue warrant and searched the house. He stated that he spoke with Reed prior to the search and affirmed that he had obtained the consent of "the owner" of the home before conducting the search. He did not expressly testify who the owner was. On cross-examination, Casas was specifically questioned about searching the appellant's bedroom. Casas testified that the door to the appellant's bedroom had been closed and that Reed had opened the door for the officers. On cross-examination he acknowledged that he had been aware that the bedroom was occupied by the appellant and that nothing in the circumstances indicated that Reed "lived" in the appellant's bedroom. While searching the bedroom, Casas discovered a weapon on top of the entertainment center, a weapon inside of the closet, and ammunition inside the dresser.

Officer Valverde also testified about the weapons found during the search and stated that, as "far as [he] knew, [the house] belonged to Mr. Reed." On cross-examination, Valverde conceded that he had been aware at the time of the search, based on Reed's claims, that only the appellant and occasionally the appellant's fiancée slept in the bedroom.

---

[2] U.S. Const. amends. IV, V, VI, XIV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. art. 38.23.

Valverde admitted that he had asked Reed no further questions regarding whatever permission Reed may have had to enter the appellant's bedroom. Reed himself did not testify at the suppression hearing.

After the State presented its evidence, the defense called Rose Carabajar, the appellant's fiancée, to testify. She stated that the appellant co-owned the house with Reed, that Reed was "excluded" from the appellant's bedroom, not allowed to enter it without express permission, and that the door to the bedroom was kept closed. Finally, the defense called the appellant to testify that he co-owned the house. The defense attempted to introduce what were represented to be certified copies of deeds reflecting such co-ownership through both of its witnesses, but the trial court sustained the State's objections and refused to receive the evidence.[3]

The trial court denied the appellant's motion to suppress, and the appellant subsequently entered into a plea bargain with the State whereby he pled guilty to unlawful possession of a firearm in exchange for five years' imprisonment. In denying the motion to suppress, the trial court did not file written findings of fact or conclusions of law. The appellant appealed, arguing that the trial court had erred in denying his motion to suppress

---

[3] The State's objection that the proffered documents "were not on file 14 days before this date of trial as required under the Rules of Evidence" was sustained. Apparently the prosecutor was referring to Texas Rule of Evidence 902(10). It seems more likely that admissibility of a certified copy of a deed would be governed by Rule 902(4) rather than Rule 902(10)—in any event, we have held that the Rules of Evidence do not apply in a pre-trial suppression hearing. *Granados v. State*, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002). The appellant did not challenge the trial court's ruling on the State's objection, however, in the court of appeals.

because Reed lacked actual and apparent authority to consent to a search of the appellant's bedroom.[4] The court of appeals held that the officer's testimony did not "amount[] to any evidence that Reed exercised actual control over [the appellant's] bedroom" and that the circumstances that the officers encountered at the appellant's house—a closed door, Reed's statement that he did not sleep in the bedroom, and Reed's opening the door to the room—were "ambiguous at best, and a reasonable person in the officer's place would have inquired further."[5] Accordingly, the court of appeals held that the trial court erred in denying the appellant's motion to suppress and remanded the case to the trial court.[6]

The State filed a petition for discretionary review challenging the court of appeals's holding that Reed lacked actual authority to consent "just because [he] did not sleep in the appellant's bedroom" and that the police could not reasonably rely on Reed's apparent authority to consent to the search absent some further clarification.[7] We granted review to examine the court of appeals's holding with respect to Reed's lack of authority, real or

---

[4] In the court of appeals, the State pointed to language in the plea agreement that the appellant had waived "all pretrial motions on file except those matters ruled on by the court," arguing that this constituted a waiver of the appellant's right to appeal. In its opinion on original submission, the court of appeals entirely failed to address this question. On rehearing, however, the court of appeals held that there was no waiver, and the State does not contest that holding in this Court.

[5] *Hubert v. State*, 286 S.W.3d 484, 490-91 (Tex. App.—Corpus Christi 2009) (*op. on reh'g*).

[6] *Id.* at 491.

[7] State's Petition for Discretionary Review, at 3.

apparent, to consent to the search of the appellant's bedroom.[8] We now reverse the judgment of the court of appeals.

## APPLICABLE LAW

### Standard of Review

In reviewing a motion to suppress, we apply a bifurcated standard of review.[9] We will review *de novo* a trial court's application of law to the facts, but we will defer to the trial court on determinations of credibility and historical fact.[10] Whether consent was given voluntarily under the Fourth Amendment is a fact question to be given deference.[11] Texas courts have not explicitly declared that the determination whether third-party consent is valid is a question of law or a question of fact.[12] As a matter of practice, however, they have

---

[8]

TEX. R. APP. P. 66.3(b). The appellant has claimed that the search of his bedroom violated his rights under the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure. Although the appellant has consistently invoked state law throughout this litigation, neither party argues that any of the state-law provisions exceeds the scope of Fourth Amendment protections. Because the briefs do not provide specific arguments or authorities to distinguish the state-law claims from the federal-law claims, we will limit our analysis to the Fourth Amendment. *Welch v. State*, 93 S.W.3d 50, 52 (Tex. Crim. App. 2002).

[9]

*St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).

[10]

*Id.; Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[11]

*Ohio v. Robinette*, 519 U.S. 33, 40 (1996).

[12]

The court of appeals's opinion cites *Maxwell v State* for the proposition that "whether consent was valid is a question of fact." *Hubert*, 286 S.W. 3d at 490 (citing *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002)). *Maxwell*, in stating that "the validity of an alleged consent to search is a question of fact to be determined from all the circumstances[,]" overextends the Supreme Court case it relies on for the proposition. *Maxwell*, 73 S.W.3d at 281 (citing *Robinette*,

analyzed the matter as a mixed question of law and fact, to be reviewed *de novo*, as evidenced by opinions that weigh the facts that are in the record on appeal and then make an independent legal determination.[13] The federal circuits have been more explicit about how they review these issues on appeal, generally concluding that whether it is reasonable for the police to credit the purported consent of a third party to conduct a particular search should be treated as a mixed question of law and fact, to be reviewed by appellate courts on a *de novo* basis.[14] Because we find that the analysis of whether a third party had authority to consent involves an application of legal principles to facts, we now hold that whether a third party had actual authority to consent to a search of another's property and whether an officer was reasonable in finding that a third party had apparent authority to consent are mixed questions of law and fact which reviewing courts should examine *de novo*. If, as in this case,

---

519 U.S. at 40). In *Robinette*, the Supreme Court held only that the *voluntariness* of consent given is a question of pure fact, and consent must be voluntary to be valid. *Robinette*, 519 U.S. at 40.

[13] *See e.g., Riordan v. State*, 905 S.W.2d 765, 770-73 (Tex. App.—Austin 1995, no pet.); *Corea v. State*, 52 S.W.3d 311, 316-18 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

[14] *See United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005) (holding that the question of whether police had a reasonable basis for finding "that a third party had authority to consent to search" is a question of law)*; United States v. Rith*, 164 F.3d 1323, 1328 (10th Cir. 1999) (holding that "whether consent was valid under the Fourth Amendment" is a question of law to be reviewed *de novo*)*; United States v. Kim*, 105 F.3d 1579, 1581-82 (9th Cir. 1997) (determining that the question of whether facts supported a finding of authority for Fourth Amendment purposes is "an inherently legal one"). *See also United States v. James*, 353 F.3d 606, 613, 615 (8th Cir. 2003) (holding that the determination of whether there was joint access and control for actual authority is a fact question reviewed under the plain-error standard but a determination of whether the government reasonably relied on a third party's consent is a question of law to be reviewed *de novo*)*; United States v. Stewart*, 93 F.3d 189, 192 (5th Cir. 1996) (holding that "[o]bjective reasonableness is a question of law reviewed *de novo*" when scope of consent given is the issue on review).

a trial court does not enter findings of fact, a reviewing court must view the evidence in a light most favorable to the trial court's rulings and assume that the trial court resolved any issues of historical fact or credibility consistently with its ultimate ruling.[15]

## Third Party Consent

The Fourth Amendment provides protection from "unreasonable" searches and seizures by government officials.[16] Over the years, the Supreme Court has examined the boundaries of reasonableness in a variety of contexts.[17] Generally, searches conducted without a warrant are deemed unreasonable.[18] There are, however, several well-settled exceptions to the warrant requirement.[19] One such exception arises when a person voluntarily consents to a search.[20] Whether it is reasonable under the Fourth Amendment for

---

[15] *St. George, supra*, at 725; *State v. Ross*, 32 S.W.3d 853, 856, n.22 (Tex. Crim. App. 2000).

[16] U.S. CONST. amend. IV.

[17] *See generally Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 602, 619 (1989) ("Except in certain well-defined circumstances, a search or seizure. . . is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause."); *Bell v. Wolfish*, 441 U.S. 520, 558 (1979) (holding that body-cavity searches of prisoners are not unreasonable); *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (holding that it is unreasonable to search individuals who are in the same general area as someone being searched under a valid warrant without something more to establish probable cause).

[18] *Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (citing *California v. Carney*, 471 U.S. 386, 390-91 (1985)); *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).

[19] *Katz v. United States*, 389 U.S. 347, 357 (1967).

[20] *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Maxwell*, 73 S.W.3d at 281.

an officer to rely on consent is a question to be determined by examining the totality of the circumstances.[21]

A third party can consent to a search to the detriment of another's privacy interest if the third party has actual authority over the place or thing to be searched. The third party may, in his own right, give valid consent when he and the absent, non-consenting person share common authority over the premises or property.[22] Although property interests are relevant to this determination, the commonality of authority to consent is not determined solely by the law of property.[23] Instead, common authority is shown by

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.[24]

A defendant who has thus assumed the risk that another may permit a search of their shared

---

[21]

*Maxwell*, 73 S.W.3d at 281 (citing *Robinette*, 519 U.S. at 40).

[22]

*United States v. Matlock*, 415 U.S. 164, 170 (1974); *Becknell v. State*, 720 S.W.2d 526, 528 (Tex. Crim. App. 1986); *Fancher v. State*, 659 S.W.2d 836, 839 (Tex. Crim. App. 1983) (explaining that "[i]t is well established in Texas that third parties have authority to consent to a search when they have equal control over and equal use of the premises being searched.").

[23]

*Matlock*, 415 U.S. at 171 n.7; *Maxwell*, 73 S.W.3d at 281.

[24]

*Matlock*, 415 U.S. at 171 n.7. *See also United States v. Rith*, 164 F.3d 1323, 1330 (10th Cir. 1999), *cert. denied* 528 U.S. 827 (1999) (noting that "control for most purposes" is a normative inquiry which depends on the relationship between the consenting third party and the appellant; where the relationship is of the kind that creates a presumption of control, as does the parent-child relationship, and the presumption is not rebutted, the third party has authority to consent, even if the third party had not been using the room).

property or premises may not complain of that search under the Fourth Amendment. And the fact that the relationship between the defendant and the third party has grown antagonistic will not necessarily vitiate consent.[25] As explained in several cases, "where one co-occupant has victimized the other, [the circumstances may be such as to] . . . provide an additional reason for validating a co-occupant's consent to a warrantless search[.]"[26]

Actual authority is not necessarily a prerequisite for a valid consensual search, however. The Supreme Court has explained that when an officer reasonably, though erroneously, believes that a third party purporting to provide consent has actual authority over the place or thing to be searched, apparent authority exists and the purported consent from the third party can serve to make the search reasonable.[27] Even if the third party lacks

---

[25] *See United States v. McAlpine*, 919 F.2d 1461 (10th Cir. 1990) (noting that the defendant's "expectation of privacy is, if anything, diminished as a consequence of the antagonism between him and the [third party]" and emphasizing that that is "particularly true when the occupant of the premises is prompted to cooperate with the police because the defendant has committed a crime upon that other person); *United States v. Moore*, 917 F.2d 215 (6th Cir. 1990) (upholding consent by defendant's girlfriend—who lived in the same premises as defendant—and stressing that she "assisted the police to avoid possible criminal implication of herself").

[26] *People v. Sanders*, 904 P.2d 1311, 1315 (Colo.1995). *See also People v. Cosme*, 397 N.E.2d 1319 (N.Y. App. 1979) (upholding fiancee's consent to search apartment shared with defendant where she took initiative to summon police because defendant was storing drugs in a closet used by both of them); *State v. Frame*, 609 P.2d 830 (Or. App. 1980) (noting that a consenting occupant can act in his own interest where he or she summons the police to seize stolen property kept in the premises because the consenting party could later be charged with possession of such items); *People v. Ireland*, 348 N.E.2d 277 (Ill. App. 1976) (noting that a co-occupant of premises in which contraband is kept runs a significant risk of facing criminal charges and can, therefore, act in his own interest in the *Matlock* sense).

[27] *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990).

actual authority to consent—that is, he does not actually have joint access to or control over the premises—his purported consent can nevertheless validate a search if it reasonably appears to the police that he does in fact have authority.

The State has the burden to show that the person who consented to the search had actual or apparent authority to consent.[28] To meet its burden, the State must provide evidence that a third party either had mutual access to and control over the place that was searched, or that the officers conducting the search reasonably believed facts provided to them by a third party that would have been legally sufficient to justify a search as reasonable. Under the Fourth Amendment, the State must show by a preponderance of the evidence that it was reasonable for officers to proceed on the information they had.[29]

### APPLICATION

The State argues that the court of appeals applied an incorrect standard of review when it failed to review the evidence in the light most favorable to the trial court's ruling.[30] However, the State fails to identify any credibility or fact determinations that the court of appeals did not resolve in favor of the trial court's decision. The trial court, in denying the motion, made implied findings of fact that the officers' testimony was credible and the facts

---

[28] *Rodriguez*, 497 U.S. at 181; *Malone v. State*, 163 S.W.3d 785, 797-98 (Tex. App.—Texarkana 2005, pet. ref'd).

[29] *Maxwell*, 73 S.W.3d at 281. Under the Texas Constitution, the State must show by clear and convincing evidence that consent was validly given. *Id*.

[30] State's Brief on the Merits, at 4.

were as the officers testified.[31] The court of appeals correctly viewed the evidence in a light most favorable to the trial court's ruling, essentially discounting the appellant's evidence and accepting all of the State's, in reaching its conclusion that there was no authority on which the search could be deemed reasonable.[32] Likewise, we also accept as true and credible the officers' testimony at the hearing. We believe, however, that the court of appeals has misconstrued the legal significance of the facts as thus construed.

### Actual Authority

On the basis of the testimony elicited during the suppression hearing, the trial court could have found, in support of its ultimate ruling, (1) that Reed was the exclusive owner of the house, (2) that the officers knew that Reed did not "live" or sleep in the room that the appellant inhabited, and (3) that Reed opened the door to the appellant's bedroom for the officers to search it. The trial court could also have chosen to disbelieve the testimony of the appellant's girlfriend that Reed was excluded from entering the room without express permission. That Reed did not sleep in the room—a fact that the officers plainly conceded they knew at the time of the search—has some tendency to show that Reed did not have mutual use of the appellant's bedroom. However, the determination of whether a person has authority to consent to a search of another person's bedroom cannot rest solely on this

---

[31] *State v. Ross*, 32 S.W.3d 853, 856, n.22 (Tex. Crim. App. 2000).

[32] *Hubert*, 286 S.W.3d at 489.

factor—*i.e.*, whether that third party sleeps in the other's bedroom.[33] This fact alone, therefore, does not negate Reed's authority to consent to a search of the appellant's bedroom.[34] Although a determination of joint access, *vel non*, is always a fact-specific

---

[33]

　　　*See Sorensen v. State,* 478 S.W.2d 532 (Tex Crim. App. 1972) (holding that twenty-year-old appellant's mother had authority to consent to a search of son's bedroom where appellant had agreed to pay $10 per week as rent, he had not instructed mother to stay out of his room, and mother "infrequently"entered appellant's room to pick up after him); *Martinez v. State,* 17 S.W.3d 677 (Tex. Crim. App. 2000) (explaining that mother's ownership of the house in which appellant lived was prima facie evidence of authority to let police officers search the house and the fact that appellant was an adult living in a bedroom within that house did not necessarily negate the mother's authority to consent to search room); *Turner v. State,* 931 S.W.2d 52 (Tex.App.—Houston [14th Dist]. 1996) (holding that appellant's mother had the authority to consent to search of defendant's bedroom; defendant lived with parents rent-free for four years, mother owned the house, appellant's bedroom door was open, mother knocked whenever appellant's door was locked, and there were no restrictions placed on mother's right to enter bedroom); *Sallings v. State,* 789 S.W.2d 408 (Tex. App.—Dallas 1990, pet. ref'd) (holding that appellant's father had authority to consent to search of defendant's bedroom where house defendant lived in was owned by his parents, room was not locked, and defendant's family was not denied access to bedroom); *Grays v. State,* 905 S.W.2d 54, (Tex App.—Amarillo, 1995) (holding that defendant's mother had common authority over defendant's room in her house even though defendant paid rent and installed a lock in his room, where he sought her permission to install the lock and gave her the only other key to the room); *Willard v. State,* 682 S.W.2d 686 (Tex. App.—Houston [1st. Dist.] 1984, pet. granted) (holding that defendant's adult son who was living on defendant's property had equal control over use of premises and had authority to consent to a search); *Smith v. State,* 797 S.W.2d 243 (Tex. App.—Corpus Christi 1990, pet. ref'd) (holding that mother who was resident of house shared with adult daughter could give valid consent to search premises); *U.S. v. Lin,* 131 Fed.Appx. 884 (3d Cir. 2005) (explaining that where defendant and landlord maintain a "family style" living arrangement with shared access to defendant's living quarters, landlord is deemed to have actual authority to consent to a search of defendant's living quarters); *Bumper v. North Carolina*, 391 U.S. 543 (1968) (noting that defendant accepted that his grandmother, as joint tenant of their home and as owner of the rifle in question, had authority to consent to a search of their home); *People v. Goforth*, 564 N.W.2d 526 (Mich. App. 1997) (holding that, although son was eighteen years old and paid rent, mother could consent to search of son's bedroom, where nothing suggested mother lacked access to room).

[34]

　　　*See e.g., Broughton v. State*, 570 So. 2d 1265 (Ala. Crim. App. 1990), *cert. denied*, (Nov. 16, 1990) (holding that the accused's grandmother could consent to a search of the accused's bedroom; grandmother owned the home, grandmother lived in the upstairs portion of the house while the accused slept in the basement, and grandmother had not been in basement more than six times in the past three years); *State v. Woods*, 806 S.W.2d 205 (Tenn. Crim. App. 1990) (holding that,

inquiry, under the "common authority" test, where the defendant lives "with a parent or other close relative," and the relative consents to a search of defendant's bedroom, most courts presume that the relative has sufficient common authority over the bedroom to authorize the consent to search."[35] The defendant may, however, overcome this presumption by presenting evidence that defendant had "exclusive possession of the searched premises."[36] Here, however, the appellant's door was not shown to have been locked, and the trial court was entitled to disbelieve the testimony of the appellant's girlfriend that Reed was "excluded" from entering the bedroom without express permission.

Notably, several courts have applied a different test and a different presumption. Mainly, these courts have followed the view that, when two autonomous adults jointly occupy a dwelling and have separate bedrooms, each occupant generally has a higher

---

where the accused lived in his grandmother's home for approximately three months, paid a portion of the bills, and the grandmother knocked on the door before entering the room, the accused's occupancy of the room was not so exclusive as to deprive the grandmother of her authority to consent to a search of the accused's room); *Glenn v. Commonwealth*, 633 S.E.2d 205 (Va. App. 2006) (holding that, as owner of the residence, the grandfather had actual authority to consent to a search of the defendant's bedroom; because there was no evidence that grandfather lacked authority to enter defendant's room and because defendant's bedroom did not have a lock or anything restricting access to the room, the court found that the grandfather shared common authority over the bedroom).

[35] *People v. Bliey*, 597 N.E.2d 830, 837 (Ill. Ct. App. 1992). *See also State v. Cole,* 706 S.W.2d 917 (Mo. Ct. App. 1986) (explaining that a person living with his family can expect more intrusion that an independent renter living with non-relatives).

[36] *Bliey*, 597 N.E.2d at 837.

expectation of privacy in his or her own bedroom.[37] Absent some showing that one occupant has exercised control, retained control, or come to an understanding with other occupants that control will be shared over the others' bedrooms, these courts start from the presumption that an occupant exercises sole control over his own bedroom and has no joint access to others' bedrooms.[38] The State can overcome this presumption by presenting facts that would support a finding that the third party who consented to the search of another's bedroom did, in fact, exercise some control over the bedroom.[39] However, absent any facts to indicate that control over a separate bedroom was shared or somehow retained, or that a third party had joint access to the room, a finding of actual authority cannot be supported. Under this view, even under circumstances in which the consenting third party is related to the person being searched, access and control are the paramount factors.

---

[37] *See generally* 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 8.5(c) (4th ed. 2004 & Supp. 2009).

[38] *See United States v. Jiminez*, 419 F.3d 34, 40 (1st Cir. 2005) (holding that the lessee of an apartment where defendant was residing could not consent to a search of the defendant's room where the lessee characterized defendant's bedroom as "his space" and said she did not enter the room "as a regular matter"); *People v. Mullaney*, 306 N.W.2d 347, 349 (Mich. Ct. App. 1981) (holding that a defendant's sister could consent to a search of only the common areas of their shared house and her own bedroom, and explicitly stating that the sister could not consent to search the defendant's bedroom because the defendant had a reasonable expectation of privacy in her own bedroom); *Commonwealth v. O'Neal*, 429 A.2d 1189, 1190-91 (Pa. 1981) (holding that a lessee of a home could not consent to a search of a bedroom that was used exclusively by a temporary gratuitous guest because the guest had an expectation of privacy in the bedroom).

[39] *See United States v. Kelley*, 953 F.2d 562, 566 (9th Cir. 1992) (holding that a third party could consent to a search of her roommate's bedroom where she had permission to use the telephone, which was located in the roommate's bedroom).

We refuse to apply such reasoning here. In our view it is more reasonable to conclude, on the particular facts of this case (viewed in the light most favorable to the trial court's ruling), that the appellant, lacking any proprietary interest in the house, or even any possessory right other than by the grace of his grandfather, assumed the risk that his grandfather might permit the search of any area of the house that he might reasonably suspect the appellant was using for criminal purposes, even including the appellant's bedroom—at least in the absence of any agreement between the two that would expressly prohibit the grandfather from making such an intrusion, or some other obvious indicium of exclusion, such as a lock on the door to demonstrate that the grandfather was, *de facto*, excluded from the room. We hold that, on the facts as the trial court was entitled to view them, Reed had actual authority to consent to the search of the appellant's bedroom.

## Apparent Authority

The State alternatively contends that Reed had *apparent* authority to consent to the search of the appellant's bedroom, *i.e.*, that the officers reasonably believed Reed had authority to consent even if he did not. Because we hold that Reed had actual authority to consent to the search, there is no need for us to determine whether the officer's conduct was justified by Reed's apparent authority. We leave the apparent-authority doctrine to be further developed in a case in which its application is, unlike here, determinative of the outcome.

## CONCLUSION

Because he possessed actual authority over the appellant's bedroom, Reed had the

power to consent to a search of the appellant's bedroom. The search of the appellant's bedroom was, therefore, reasonable under the Fourth Amendment. Accordingly, we reverse the judgment of the court of appeals and, as there are no other points of error requiring remand, we affirm the judgment of the trial court.


Delivered:    May 26, 2010
Publish