ACCEPTED
03-15-00053-CR
6820314
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/8/2015 10:42:27 AM
JEFFREY D. KYLE
CLERK

No. 03-15-00053-CR

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT OF
TEXAS AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

9/8/2015 10:42:27 AM

JEFFREY D. KYLE
Clerk

********

# KEVIN DUANE DRISDALE

## VS.

# THE STATE OF TEXAS
********

ON APPEAL FROM THE 264th DISTRICT COURT
OF BELL COUNTY, TEXAS
Cause No. 71,785

******

# STATE'S BRIEF
******

HENRY GARZA
DISTRICT ATTORNEY

BOB D. ODOM
ASSISTANT DISTRICT ATTORNEY
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

*Oral Argument Not Requested*

1

# TABLE OF CONTENTS

**ITEM**                                                                        **PAGE**

Index of Authorities ............................................................... 3

Statement Regarding Oral Argument ..................................... 4

Statement of the Case ........................................................... 4

Statement of Facts ................................................................ 5

Summary of State's Argument .............................................. 9

Argument and Authorities ................................................... 10

    Issue on Appeal ............................................................... 10
                  TRIAL COURT ABUSE DISCRETION DENYING
                  MOTION TO SUPPRESS SEARCH WHERE CO-
                  TENANT CONSENTED IN ABSENCE OF
                  APPELLANT?

    Standard of Review ......................................................... 10

    Application and Analysis ................................................. 10

        Third Party Consent ................................................. 10

        The Evidence ............................................................ 13

Prayer .................................................................................. 19

Certificate of Compliance with Rule 9 ................................. 20

Certificate of Service ........................................................... 20

# INDEX OF AUTHORITIES

**CASES**                                                                                          **PAGE**

*Copeland v. State*, 399 S.W.3d 159 (Tx. Cr. App. 2013) ....................... 12

*Florida v. Jimeno*, 500 U.S. 248 (1991) ...................................... 18

*Georgia v. Randolph*, 547 U.S. 103 (2006) ............................... 11

*Hubert v. State*, 312 S.W.3d 554 (Tx. Cr. App. 2010) .........................10-13

*United States v. Matlock*, 415 U.S. 164 (1974) ..................................... 11

*Valtierra v. State*, 310 S.W.3d 442 (Tx. Cr. App. 2010) ...................... 16

**OTHER**

*United States Constitution*

       Fourth Amendment ...................................................................... 10

*Texas Penal Code*

       Section 42.062 ............................................................................ 8

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument.

## STATEMENT OF THE CASE

The Appellant, Kevin Duane Drisdale, was indicted for the offense of possession of cocaine with the intent to deliver, in an amount by aggregate weight, including any adulterants and dilutants, of four grams or more, but less than two hundred grams.  The indictment also alleged that the Appellant had been previously convicted of the felony offense of possession of a controlled substance over four grams but less than two hundred grams for purposes of enhancement of sentence. (CR-4).

The Appellant filed a motion to suppress the warrantless search and arrest. (CR-18).  The trial court heard that motion and it was denied. (RR7-66, 67, 68).

The Appellant subsequently entered into a plea bargain in which the State agreed to recommend a sentence of 20 years and the Appellant retained the right to appeal the trial court's ruling on his motion to suppress. (CR-33; RR8-26).  The Appellant waived a jury and entered his plea of guilty to the offense charged in the indictment and his plea of true to the enhancement allegations. (RR8-25).  The trial court took

judicial notice of the Appellant's judicial confession. (CR-38; RR8-27, 28). The court found the Appellant guilty and, following the plea bargain, assessed punishment at 20 years in the Texas Department of Criminal Justice Institutional Division. (RR8-29, 30).

The Appellant gave timely notice of appeal. (CR-49). The trial court certified his right to appeal matters filed and ruled on before trial and not subsequently withdrawn or waived. (CR-41).

## STATEMENT OF FACTS

Killeen Police Officer Stickles and Recruit Officer Hydorn were dispatched to the location of a 911 call hang up at 4:15 a.m. (RR7-9, 39). When they arrived in the apartment parking lot they were flagged down by Brenda Layton. Ms. Layton told them that she had made the 911 call (RR7-10, 11). She pointed out a male standing on the upper stairs and said that they had been arguing and that he had slapped her and had taken her cell phone from her as she was calling 911 and disabled it (RR7-15). She told the officers that he was "going to run" and that he was on parole and had drugs. (RR7-11, 13, 40).

Officer Stickles approached the male and identified him as the Appellant. He claimed that he and Layton had an argument and she had

misplaced her keys and cell phone. (RR7-13). The Appellant told the officer that he wanted to leave and go to the gym to work out (RR7-14) and calm down (RR7- 43). Having nothing to hold him on at that point, the officer told him he could leave and he did. (RR7-14).

After the Appellant left Ms. Layton continued to be upset and afraid that the he would return. She said that the Appellant had slapped her and disabled her phone when she was calling 911. She was afraid to go back into the apartment to look for her keys and cell phone. (RR7-15, 16). Officer Stickles offered to walk her back to the apartment and to help her look for her phone and keys and she agreed. (RR7-15, 16).

Brenda Layton told the officer that she had awakened with the Appellant slapping her in anger over a picture on her cell phone. She said she had been trying to move out and had given notice because he was selling narcotics and had "certain individuals" there frequently. She told the officer that the narcotics were in a brown box. (RR7-16).

Layton and the Appellant were both on the apartment lease and jointly occupied the premises. (RR7-13, 17).

After the Appellant had departed for the gym at his own request, Ms. Layton gave the officers verbal consent to search for her keys, cell phone, and the brown box containing the drugs. (RR7-17, 44, 45).

As Officer Stickles went into the bedroom he observed the brown wooden box on a shelf in the open closet. Ms. Layton was standing next to him and the officer asked her if that was the box and she replied "yes". He then asked if he could look inside and she again gave consent. (RR7-17, 18). The box was not locked and the lid simply flipped open. (RR7-31). The box contained baggies, razor blades, a digital scale, and a substance the officer, based upon his training and experience, believed to be crack cocaine. (RR7-19).

As he was examining the contents of the box, Officer Stickles heard voices in the other room and realized that the Appellant had returned and was talking to Officer Hydorn. Stickles put the box back on the shelf and went to speak to the Appellant. (RR7-19). The Appellant stated that he needed his headphones for the gym and had come back for them. He said that they were on the nightstand in the bedroom. Stickles escorted him into the bed room to get them. (RR7-20, 21).

The officer then asked the Appellant if he knew where Layton's cell phone might be and the Appellant lifted the mattress and pointed to a cellphone between the mattress and box springs. (RR7-21). Stickles again asked if he lived there and the Appellant reiterated that he was on

the lease and pointed out some of his clothing in the closet and dirty clothes basket. He was very vague when asked what else in the closet belonged to him. (RR7-21, 22).

The Appellant was arrested for interference with a 911 call.[1] (RR7-23).

Brenda Layton signed a written consent to search form. (RR7-23, 24, 45).

At the conclusion of the hearing, denying the motion to suppress, the trial court recited its findings:

> "THE COURT: All right. The Court will deny the motion to suppress. The Court finds that Miss Layton and the defendant apparently both live in the apartment. The apartment being leased by Miss Layton and there has been a 911 call claiming domestic violence, that she detailed information regarding interference with 911, as well as physical assault, and reportedly indicated the defendant was selling drugs and was on parole and might run and she as the owner of the apartment and given consent to the police officers to help her look for the keys and the cell phone.
>
> So the Court further finds that the closet to which the box containing the drugs and paraphernalia, scales, baggies was found in a closet containing clothing belonging to both—Brenda Layton as well as the defendant and that she had given consent as well from the officer to help her search for her keys and cellphone.

---

[1] See Section 42.062, *Texas Penal Code*.

So the box was returned to the shelf when apparently the recruit and the defendant came back into the apartment but the drugs had already been discovered with the consent, the defendant was arrested at that point for the interference after providing the cellphone which was hidden under the mattress, was arrested for interference with the 911, and apparently then the drug possession following the discovery.

So the court finds that the—there was consent for the search which was actually  being given to find keys and cellphone and certainly was discovered.  So the Court is going to deny the motion to suppress." (RR7-86-88)

## SUMMARY OF STATE'S ARGUMENT

Ms. Layton and the Appellant jointly occupied the apartment and Layton consented to the search when the Appellant was not physically present on the premises.  The evidence was sufficient to establish by a preponderance of the evidence that Layton had actual and apparent authority to consent to the search the apartment and to open the box containing the drugs so that the officers reasonably concluded that they could legally search the premises without a warrant pursuant to her consent.

# ARGUMENT AND AUTHORITIES

## *Issue on Appeal*

Did the trial court err in denying the motion to suppress when the co-tenant consented to the search in the absence of the Appellant?

## *Standard of Review*

In reviewing a trial court's ruling on a motion to suppress a bifurcated standard of review is applied. The application of the law to the facts must be reviewed *de novo*, while the determination by the trial court of the credibility of the evidence and the historical facts must be accorded great deference. *Hubert v. State*, 312 S.W.3d 554, 559 (Tx. Cr. App. 2010).

Whether a third party had actual or apparent authority to consent to a search is a mixed question of law and fact and will be reviewed *de novo*. In so doing the appellate court must look to the totality of the circumstances. *Hubert* at 559, 560.

## *Application and Analysis*

### *Third Party Consent*

While the Fourth Amendment to the *United States Constitution* protects against unreasonable searches and seizures, the courts have

long recognized that an exception arises when a person voluntarily consents to a search. *Hubert* at 560.

In *United States v. Matlock*. 415 U.S. 164 (1974), the United States Supreme Court recognized that a third party can consent to a search where he or she as authority over the premises or property to be searched. The Supreme Court explained:

> "...when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that the consent was given by the defendant, but may show that permission to search was obtained from a third party, who possessed common authority over, or other sufficient relationship to the premises or effects sought to be inspected." *Matlock* at 171.

The Court went on to point out that those who share joint access or control of the property or premises assume the risk that one of their number might permit the common area to be searched.

The Supreme Court subsequently clarified that "The consent of one who possesses common authority over the premises or effects is valid against the absent, nonconsenting person with whom authority is shared. Thus where the nonconsenting person is physically present and expressly refuses consent the warrantless search cannot be rendered reasonable by third party consent. *Georgia v. Randolph*, 547 U.S. 103,

11

122-123 (2006). See also *Copeland v. State*, 399 S.W.3d 159, 163 (Tx. Cr. App. 2013).

A third party may, in her own right, give valid consent when she and the absent nonconsenting person share common authority over the premises or property. That common authority is shown by mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the search in her own right and that the others have assumed the risk that one might permit the search of the common area. *Hubert* at 560, 561, citing *Matlock* at 171.

Actual authority to consent, however, is not a prerequisite to a valid consentual search in such circumstances. When an officer reasonably believes that a third party purporting to consent has actual authority to do so, then apparent authority exists and the purported third party consent renders the warrantless search reasonable. *Hubert* at 561.

The State has the burden to show by a preponderance of the evidence that the person who consented to the search had actual or apparent authority to consent and, therefore, must present evidence that the consenting party had mutual access to and control over the

place to be searched, or that the officers conducting the search reasonably believed the facts provided to them by the consenting third party that would have been legally sufficient to justify a reasonable search. *Hubert* at 562.

### *The Evidence*

It must be noted that the Appellant does not contest the voluntariness of the consent to search by Ms. Layton.[2] Nor does he contest that she, in fact, consented to the search of the apartment and the brown box.

The evidence in this case was sufficient to prove by a preponderance of the evidence that Brenda Layton had both actual and apparent authority to consent to the search and that the officers acted reasonably in searching pursuant to that consent.

Brenda Layton lived with the Appellant in the apartment. Both were on the lease. In fact, Ms. Layton told the officers that she was then going through the process of vacating the premises by giving notice to do so under the lease. Both had possessions in the apartment, including in the closet where the box containing the drugs was ultimately found.

---

[2] Whether consent was given voluntarily is a question of fact and the trial court's determination must be given great deference. *Hubert* at 559.

Ms. Layton told the officer that she was on the lease and lived in the apartment and that the Appellant had taken her cell phone from her and disabled it. She told the officer that the cell phone and her keys were still in the apartment and expressed fear of entering to recover them lest the Appellant return. She invited the officers to come in and help her locate the cellphone that the Appellant had taken from her and her keys.

Layton also told the officers that the drugs were in a brown box inside the apartment. She consented to allow them to enter to search for the brown box and drugs as well as her phone and keys. (RR7-17). When the officer observed the brown box on the shelf in the open closet Brenda Layton expressly gave him permission to open the box. (RR7-18). It was not locked and he merely flipped open the lid to expose the cocaine and paraphernalia. Clothing belonging both to the Appellant and Ms. Layton were in that same closet.

Ms. Layton subsequently confirmed her verbal consent to search in writing. (RR7-23, 24). See State's Exhibit 8 (RR9).

The Appellant had asked the officers permit him to leave to go to the gym to calm down and he was allowed to do so prior to their discussion with Ms. Layton that led to consent to search for the phone

and keys and the drugs. They allowed him to go because they had no reason to hold him at that point. Thus he was not present by his own volition when Layton gave consent to search the apartment.

It must also be noted that when the Appellant returned to the premises, ostensibly to get his headphones, he made no attempt whatsoever to retract or contest the validity of the consent given by Brenda Layton. Therefore, he could hardly be considered a "nonconsenting" co-tenant.

The trial court made a factual determination that Ms. Layton and the Appellant both lived in the apartment and Layton leased it. The court also found that the closet was jointly occupied by both of them. It further found that, based upon the evidence, Layton voluntarily gave her consent to search and had the authority to do so.

The greater weight and degree of credible testimony clearly showed that Brenda Layton had actual authority to consent to the search and that, by his joint occupancy of the apartment, the Appellant assumed the risk that she might do so. Moreover, given the officers careful determination that Layton lived in and leased the apartment, it was certainly reasonable for the officers to believe that her consent was legally sufficient to justify the search as reasonable.

The Appellant does not actually contest that Brenda Layton had the authority to consent to the search of the apartment, but questions her authority to consent to open the brown box that contained the drugs. It is true that, once given consent to enter, the officer may act only in accordance with the purpose for which he was invited or allowed to enter, the question is what a reasonable person would have understood to be his authority based upon the exchange with the person consenting to the entry. *Valtierra v. State*, 310 S.W.3d 442,448-449 (Tx. Cr. App. 2010). While a person is free to limit the scope of the consent she gives, an entirely open ended consent would give a reasonable person no cause to believe that the search would be limited in any respect. Furthermore, where a person is silent in the face of the officer's actions it may, under the circumstances, certainly imply consent to the further actions of that officer. *Valtierra* at 449.

In this case Brenda Layton asked the officers to enter and help her to locate the cellphone the Appellant had taken from her when he interfered with her emergency call and her keys and to locate the brown box containing the drugs. If that may be construed as a limitation upon her consent, the officers did nothing outside of that limitation. The brown box was visible through the open closet door. Officer Stickles

asked Layton if that was the box she had told them about and then expressly asked her if he could open it. She said yes. At that point they had not found either the keys or the cellphone under the mattress. The box certainly was capable of containing either or both. See State's Exhibit 3. (RR9).

Did the officers have grounds to reasonably believe that Brenda Layton had actual or apparent authority to consent to the opening of the brown box? She certainly knew what was inside the box as she told the officers when they first arrived outside the apartment that the Appellant had drugs inside in a brown box. She stated that she was moving out in an attempt to get away from him precisely because he was dealing in drugs. It is a reasonable deduction that the Appellant had not kept the brown box or its contents from Layton nor excluded her from access to it. There is nothing to indicate that he ever asserted any right to privacy with respect to the box with respect to his co-tenant, Ms. Layton. The box was located in the closet that Layton and the Appellant shared on the shelf in plain sight and was not locked. She clearly asserted her authority to allow the search of the box by expressly consenting to it and thus the officers were acting in response to her reasonably apparent authority to do so.

When the Appellant re-entered the apartment and accompanied the officer into the bedroom to get his headphones, he showed the officer where he had hidden Ms. Layton's cellphone under the mattress. In response to the officer's inquiries, the Appellant pointed to clothing in the closet in order to confirm his residence there, but he did not make any attempt to assert any exclusive authority over the brown box or to refuse consent to its search or to revoke the consent given by Layton.

Brenda Layton had actual and apparent authority to consent to the search of the apartment. That consent was for the purpose of finding her cellphone, keys and the brown box. The officers did not exceed the scope of that consent. There were no express limits otherwise placed upon that consent to search by Ms. Layton nor did the Appellant make any attempt to revoke or limit the scope of the search and he asserted no exclusive authority over the box found in their shared bedroom. See *Florida v. Jimeno*, 500 U.S. 248 (1991), where defendants gave permission to search without placing any explicit limitations on the scope of the search officers properly searched containers found in the car that was the object of the consent.

Contrary to the Appellant's argument, the question is not whether or not the officers could have treated Layton as a named informant and

then had probable cause to get a search warrant. The question is whether, based upon what she had told them, the officers had legally sufficient information to justify a search pursuant to her consent. The evidence in this case is certainly sufficient to show by a preponderance of the evidence that they did.

## PRAYER

The State of Texas respectfully prays that the judgment of conviction herein be, in all things, be affirmed.

Respectfully Submitted,

HENRY GARZA
District Attorney

/s/ *Bob D. Odom*

BOB D. ODOM
Assistant District Attorney
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

# CERTIFICATE OF COMPLIANCE WITH RULE 9

This is to certify that the State's Brief is in compliance with Rule 9 of the *Texas Rules of Appellate Procedure* and that portion which must be included under Rule 9.4(i)(1) contains 3,088 words.

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this brief has been served upon, James H. Kreimeyer, Counsel for Appellant, by electronic transfer via Email, addressed to him at jkreime@vvm.com on this 8th day of September, 2015.

/s/ *Bob D. Odom*
BOB D. ODOM
Assistant District Attorney