NO. 07-10-00032-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JULY 19, 2011

ARSENIO PETTY, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY;

NO. F-2009-0413-A; HONORABLE CARMEN RIVERA-WORLEY, JUDGE

Before CAMPBELL, and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Arsenio Petty, appeals from a conviction for capital murder.[1]  The State did not did not seek the death penalty, therefore, appellant was automatically sentenced to incarceration for life in the Institutional Division of the Texas Department of Criminal Justice without the possibility of parole.[2]  Appellant appeals contending that the trial court committed reversible error in admitting his videotaped confession, and in

---

[1] See TEX. PENAL CODE ANN. § 19.03(a)(2) (West 2011).

[2] See TEX. PENAL CODE ANN. § 12.31(a) (West 2011).

admitting State's exhibit 58, a picture drawn by one of appellant's victims. Further, appellant contends that the automatic life sentence mandated by statute is unconstitutional under both the United States Constitution and the Texas Constitution. We affirm.

Factual and Procedural Background

Appellant does not object to the sufficiency of the evidence to sustain the jury's verdict. Therefore, only that portion of the factual and procedural background that is relevant to appellant's contentions on appeal will be discussed.

On December 30, 2008, appellant and at least two other men entered a convenience store, The Gas Pipe, in Carrollton, Texas. A surveillance camera reflects that, as the first two men enter the store, appellant reaches and takes a handgun from Maurice Hall and begins shooting at the employees and patrons in the store. In the ensuing melee, appellant shot and struck Rebecca Kemp in the upper left chest. Kemp died as a result of this wound. All of the assailants, including appellant, fled the store after the shooting. No money was obtained in the robbery.

Having no clear leads or suspects in the shooting, the police released the surveillance videotape to local media outlets. As a result of the video being played on local television stations, information was furnished to the police identifying appellant as the individual doing the shooting in the video. Upon further investigation, the police interviewed appellant's sister, Shadara Perry, who told the police that appellant had told her he thought he had shot somebody during the robbery shown on television.

2

Appellant was subsequently arrested and, after his arrest, he gave a videotaped statement to the police confessing to his actions in the shooting. Appellant filed a pre-trial motion to suppress the confession. After viewing that portion of the statement that was at issue, the trial court overruled the motion to suppress. During the trial, the videotape in question was introduced into evidence as State's exhibit 54 and played for the jury.

During the trial of appellant, a number of witnesses were called to testify that appellant had either told them of his participation in the robbery/murder, or about observing appellant's reaction when the television news had played the surveillance video of the event. The State also introduced State's exhibit 58 during the testimony of Holly Arceneaux. Arceneaux was in The Gas Pipe convenience store at the time of the shootings. As part of her personal therapy, she had drawn a picture of the incident. The State offered Arceneaux's drawing. Appellant objected to the introduction of the picture on the basis of relevance, prejudice, and best evidence. The trial court overruled the objections and allowed the picture to be introduced before the jury. Upon submission of the case to the jury, the jury found appellant guilty of the offense of capital murder. Because the State had waived the death penalty, appellant was automatically sentenced to confinement for life without the possibility of parole.

Appellant filed a motion for new trial, which was denied by the trial court. Subsequently, appellant requested the trial court file findings of fact and conclusions of law regarding the admission of the videotaped confession. Because these findings and conclusions were not included in the original Clerk's Record filed with this Court, we abated this matter back to the trial court to file the requested findings and conclusions.

3

These findings and conclusions were subsequently filed and are part of the record in this appeal.

Appellant has appealed contending that the trial court's admission of his videotaped confession and the Areceneaux picture was reversible error. Further, appellant contends that the statutory punishment scheme for a capital murder conviction where the death penalty is not being sought is unconstitutional. We disagree with appellant's contentions and will affirm.

Motion to Suppress

Appellant's first two issues contend that the trial court abused its discretion by admitting the videotaped confession over appellant's objection. Issue one is based upon appellant's objection that the confession was obtained in violation of article 38.21 of the Texas Code of Criminal Procedure and, therefore, was not admissible pursuant to article 38.23 of the Texas Code of Criminal Procedure.[3] See TEX. CODE CRIM. PROC. ANN. art. 38.21; art. 38.23 (West 2005). Issue two contends that the same videotaped confession was inadmissible because it was obtained in violation of the United States Constitution.

Initially, we must address the State's contention that appellant's motion to suppress the videotaped confession did not properly apprise the trial court that appellant was objecting on the basis of the United States Constitution. While the oral motion to suppress was not the model of clarity, we feel certain that, when appellant's trial counsel urged that the videotaped confession was inadmissible because the same

---

[3] Further reference to the Texas Code of Criminal Procedure will be by reference to "article ___" or "art. ___."

4

was coerced by the promise made to appellant, the trial court understood appellant to be urging exclusion of the evidence on the basis of the United States Constitution.  See Arizona v. Fulminante, 499 U.S. 279, 285-86, 111 S.Ct 1246, 113 L.Ed.2d 302 (1991). Accordingly, we do not agree with the State that appellant has waived his United States Constitutional claim.  Further, upon review of the trial court's findings of fact and conclusions of law, it is clear that the trial court understood appellant's motion to include a United States Constitutional claim.

Standard of Review

To review the denial of a motion to suppress, we apply a bifurcated standard of review.  See Hubert v. State, 312 S.W.3d 554, 559 (Tex.Crim.App. 2010).  We review the trial court's application of the law to the facts de novo.  Id.  However, we defer to the trial court's determination of credibility and historical fact.  Id.  Because the trial court is in the position to see the witnesses testify and to evaluate their credibility, we must view the evidence in the light most favorable to the trial court's ruling.  See Wiede v. State, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007).  Where a trial court has made findings of fact, as is the case here, we review the record to determine whether the evidence, viewed in the light most favorable to the trial court's ruling, supports the fact findings entered.  See State v. Kelly, 204 S.W.3d 808, 818 (Tex.Crim.App. 2006).

Analysis

Article 38.21

Turning first to the state statutory argument put forth by appellant, article 38.21 provides that "an accused's statement may be used against him at trial, if it appears that

5

the same was freely and voluntarily made without compulsion or persuasion, under the rules hereinafter prescribed." Appellant is not contending that the rules prescribed by the statutory scheme were not complied with. It is appellant's position that the detective who took appellant's videotaped confession, Mark Ahearn, made promises to appellant that resulted in the confession and, therefore, made the confession inadmissible. Specifically, appellant contends that Detective Ahearn induced appellant's confession by promising him that he would be permitted to see his family if he confessed.

The State contends that the promise that appellant could see his family was couched in terms of seeing them when they finished the interview process before he was taken to jail and was not conditional on appellant confessing. Further, whatever the nature of the promise made, the State contends that it was not of such a nature that it would cause appellant to speak untruthfully.

In order for a promise to invalidate a confession under article 38.21, the promise must be: 1) positive, 2) made or sanctioned by someone in authority, and 3) of such an influential nature that it would cause a defendant to speak untruthfully. Martinez v. State, 127 S.W.3d 792, 794 (Tex.Crim.App. 2004).[4] Appellant and the State agree that there was a positive promise, that appellant could visit his family, made by a person in authority, Detective Ahearn. However, it is the third element that is hotly contested, whether the promise at issue was of such an influential nature that it would cause a defendant to speak untruthfully.

_____

[4] See also Perales v. State, No. 2-07-268-CR., 2008 Tex. App. LEXIS 7675, at *11-*12 (Tex.App.—Fort Worth 2008, pet. ref'd, untimely filed) (not designated for publication); Wells v. State, No. 2-05-352-CR, 2007 Tex. App. LEXIS 2544, at *10 (Tex.App.—Fort Worth 2007, no pet.) (not designated for publication).

The trial court made specific findings of fact that address the issue of discussions regarding appellant's family and promises made to appellant about seeing his family. The applicable findings are:

> 4. Prior to and after the defendant's admission of capital murder, Detective Ahearn told the defendant that after they had finished talking and when they got through the entire story once, Detective Ahearn would let the defendant talk to his family and say goodbye, and that defendant's family could visit with the defendant before he was taken to the jailhouse.
>
> 5. The defendant was not told that he could not talk or visit with his family if he refused to give a confession.
>
> 6. The defendant never requested nor was he denied the right to contact any family members.

Our review of the record reveals that the findings of the trial court regarding any promise made to appellant by Detective Ahearn are supported in the testimony and on the videotape of the confession. See Kelly, 204 S.W.3d at 818.

Additionally, we note that, even if we were to agree with appellant that Detective Ahearn did refuse to allow him to see his family until he confessed, the videotaped confession would still have been admissible. This is because the type of promise made was not of the nature or type that conferred such a benefit upon appellant as would cause him to speak untruthfully. See Martinez, 127S.W.3d at 795 ("Under State law the determination is whether the officially sanctioned positive promise would be likely to influence the defendant to speak untruthfully and not whether the defendant in fact spoke untruthfully."). Such was the finding of fact entered by the trial court. See Kelly, 204 S.W.3d at 818. Again, the record supports this finding. We are of the opinion that, even if Detective Ahearn had promised appellant that he could see his family if he

confessed, such a promise would not confer any benefit on appellant that would cause him to speak untruthfully. Accordingly, appellant's issue one is overruled.

United States Constitution

Appellant's second issue contends that the confession should have been suppressed because it was obtained in violation of the safeguards contained in the United States Constitution. When focusing on an alleged due process violation which resulted in the statement being obtained involuntarily, the standard is whether all of the attendant circumstances reflect that appellant's will was overborne. See Dickerson v. United States, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000); see also Delao v. State, 235 S.W.3d 235, 239 (Tex.Crim.App. 2007), cert. denied, 552 U.S. 1168, 128 S.Ct. 1128, 169 L.Ed.2d 953, (2008).

In addition to the promises that appellant contends that Detective Ahearn made, appellant points to his age, 20 years old, and alleged psychological problems he was having as a result of his having been previously shot, as part of the totality of the circumstance requiring the trial court to have found appellant's confession involuntarily given. Giving full play to the totality of the circumstances, the record does not support appellant's position. That appellant was upset and under stress is borne out in the video of the confession interview. However, a review of the record shows that the only matter mentioned to the trial court, other than the promise allegedly made by Detective Ahearn, was appellant's age, and this was only argued in a very limited and cursory manner. Nowhere in the objection during the hearing on the motion to suppress or at the time State's exhibit 54, the videotaped confession, was offered does the record

8

reflect that appellant contended that any psychological issues might have weighed on his decision to confess. To the extent appellant now attempts to argue that subject matter, he is constrained from doing so as his objection at trial does not comport to that argument in his brief. See TEX. R. APP. P. 33.1(a)(1)(A). Regarding appellant's age, at trial appellant's attorney only mentions it in passing while arguing the motion to suppress. We will, however, address this issue as having been brought to the trial court's attention. See id.

Appellant's age at the time of the statement was, according to his brief, 20 years. The trial court's findings of fact recite that the statement was "made knowingly, intelligently, freely, and voluntarily without any threats, compulsion, persuasion, duress, coercion, or other improper influence." In our review of the record to ascertain the totality of the circumstances, we find nothing indicating that appellant did not understand the nature of the questions asked him or the implication of his answers. Rather, what we see is a younger man who understands that he is in a substantial amount of trouble and appears to decide to confess once he realizes that his family and friends have already talked to the police about his involvement in the crime. There is no demonstrative overreaching by the police, nor is there any apparent coercion. See Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (coercive police activity is a necessary predicate to the finding that a confession was not voluntary within the meaning of the Due Process Clause). Additionally, in addressing appellant's first issue, we found that the trial court's finding of fact that there were no promises made to appellant by Detective Ahearn was supported in the record. In regard to the second issue, the trial court's finding of fact regarding a lack of coercion or

9

overreaching is likewise supported in the record. Therefore, we overrule appellant's second issue. See Kelly, 204 S.W.3d at 818.

Admission of State's Exhibit 58

Appellant's third issue contends that, when the trial court allowed State's exhibit 58 to be admitted before the jury, the trial court abused its discretion. State's exhibit 58 was a picture drawn by Holly Arceneaux shortly after the incident in question. Arceneaux had been one of the customers inside The Gas Pipe at the time of the shooting. According to the record, Arceneaux drew the picture in question while undergoing therapy as a result of witnessing the events of that day. According to Arecneaux's testimony, the picture represents both the shooting and the immediate aftermath of the shooting with the victim and others depicted. Appellant objected that the picture was irrelevant, prejudicial, and that better evidence existed in the form of the surveillance camera photographs. The trial court overruled the objection and the exhibit was admitted before the jury.

Standard of Review

When dealing with issues regarding the admission of evidence, the standard of review is abuse of discretion. Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000). A trial court abuses its discretion only when the reviewing court can say with confidence that no reasonable perception of the matter under consideration could have yielded the decision made by the trial court. See Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g). If the trial court's decision is correct on

10

any theory of law applicable to the case, the decision will be sustained.  See State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000).

Analysis

Evidence is relevant if it tends to make the existence of a fact of consequence more or less probable than it would be without the evidence.  See Tex. R. Evid. 401.[5] Relevant evidence is generally admissible unless otherwise provided.  See Rule 402.

The evidence at issue allegedly portrayed the scene of the shooting as it occurred and immediately after it occurred.  However, from our review of the exhibit, it is difficult to see how the picture in question contributed anything of consequence toward proof of any of the elements of the offense.  At best, the picture was simply cumulative of the testimony of the witness.  If we assume the evidence had such limited relevancy that it should not have been admitted, we must make further inquiry about the harm to appellant from the admission of the exhibit.

An erroneous admission of evidence is judged for harm under the non-constitutional harm analysis of Texas Rule of Appellate Procedure 44.2(b).  See Russell v. State, 155 S.W.3d 176, 181 (Tex.Crim.App. 2005).  In conducting such an analysis, we may disregard the error if, after examining the entire record, we have a fair assurance that the error did not influence the jury, or had but a slight effect.  See Guevara v. State, 152 S.W.3d 45, 53 (Tex.Crim.App. 2004).

_____

[5] Further reference to the Texas Rules of Evidence will be by reference to "Rule ___."

11

A review of the record reveals that the events depicted in State's exhibit 58 were testified to by several other witnesses, including Arceneaux. Specifically, appellant was identified by another participant in the shooting. The victim's condition after the shooting was described by several witnesses. The surveillance videos displayed the actions of appellant and the other participants. The appellant confessed to being the shooter. Nothing in the record indicates that the State unduly emphasized State's exhibit 58.

Thus, from our review of the entire record, we are assured that the admission of State's exhibit 58 did not influence the jury, or, at most, had a very insubstantial influence in their returning a verdict against appellant. Id. Therefore, we find that the admission of said exhibit did not affect appellant's substantial rights. Id. Accordingly, the error in admission of the exhibit was harmless and will be disregarded. See Rule 44.2(b). Appellant's third issue is overruled.

## Mandatory Life Sentence

Appellant's fourth and fifth issues contend that the conviction is invalid because the imposition of a mandatory life sentence without parole violates the Eighth Amendment of the United States Constitution (issue four) and Article 1, Sections 13 and 15, of the Texas Constitution (issue five) because such an "automatic" sentence denied appellant his right to an individualized sentence.

First, the record does not include any objection during the trial to the application of the statute governing punishment for capital murder when the State waives the death penalty. See TEX. PENAL CODE ANN. § 12.31(a). Thus, it appears that appellant's claim,

which we read to be attacking the sentencing scheme as being applied to appellant under a disproportionate sentence analogy, is an "as applied" attack against the statute as opposed to a "facial" challenge against the statute.[6] Appellant has failed to preserve this objection for our review. Rule 33.1(a)(1)(A). The inaction of appellant at trial leaves the Court with nothing to review.[7] Accordingly, appellant's fourth and fifth issues are overruled.

Conclusion

Having overruled appellant's issues, the judgment of the trial court is affirmed.


Mackey K. Hancock
Justice


Publish.

---

[6] Even if we viewed the issues as being a facial attack against the statute, appellant's failure to object at trial would have forfeited his issues. See Karenev v. State, 281 S.W.3d 428, 434 (Tex.Crim.App. 2009).

[7] Even were we to accept that appellant had no requirement to object at trial, the decided case law is against appellant and we would not sustain his fourth and fifth issues. See Sierra v. State, 157 S.W.3d 52, 64-65 (Tex.App.—Fort Worth 2004), aff'd, 218 S.W.3d 85 (Tex.Crim.App. 2007).