**Opinion filed August 30, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00225-CR
_____

## IRIS WILSON JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No.  CR38383**

## M E M O R A N D U M   O P I N I O N

The jury convicted Iris Wilson Jr. of the offense of theft over $1,500 but less than $20,000.  *See* TEX. PENAL CODE ANN. § 31.03 (West Supp. 2012).  After finding three enhancement paragraphs to be true, the trial court assessed Appellant's punishment at confinement for twelve years and a fine of $10,000 and ordered payment of $4,300 restitution to the victim.  We affirm.

Appellant argues in two issues that the trial court abused its discretion when it denied Appellant's motion to suppress and that it erred when it denied Appellant's request for a jury instruction.

At the time of the offense, Tom Esikhati was the owner of a driving academy. Esikhati employed Appellant to, among other tasks, clean the academy's vehicles and classroom. From around 4:30 p.m. to 6:30 p.m. on the date of the offense, Esikhati left Appellant alone in the academy and locked the doors behind him. Within a few hours of Esikhati's return to the academy, he noticed that some money that he stored in the classroom was missing. At trial, Esikhati testified that the missing money consisted of $2,500 that he kept in a brown envelope, $1,500 that he stored in a white envelope, and about $300 that was placed in cans. An audio recording of a statement Appellant made to police in which he admitted to stealing money from Esikhati was also admitted.

In his first issue, Appellant contends that the trial court committed reversible error when it denied Appellant's motion to suppress the recorded statement that he gave to law enforcement. We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011); *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). When we review a ruling on a motion to suppress, we apply a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to the trial court's determination of historical facts. *Valtierra*, 310 S.W.3d at 447. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*; *Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007). Second, we review de novo the trial court's application of law to facts. *Hubert*, 312 S.W.3d at 559; *Valtierra*, 310 S.W.3d at 447. We will sustain the trial court's ruling if it is reasonably supported

2

by the record and is correct on any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 447–48; *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

Appellant contends that the trial court should have suppressed Appellant's confession because the officer who took Appellant's statement circumvented Appellant's *Miranda*[1] rights by using an impermissible "question-first, warn-later" strategy to obtain the confession during a custodial interrogation. In order to address this issue, we will first determine whether Appellant was subject to a custodial interrogation at the time the statement that he sought to suppress was made.

A statement made by an accused in a custodial interrogation cannot be used as evidence against him at his trial unless he had been given proper warnings under *Miranda* and Article 38.22 and had knowingly, intelligently, and voluntarily waived the rights contained in the warnings. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005). If the statement does not stem from custodial interrogation, the warnings are not required and the statement can be used against the accused at trial. *Id.*

Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. It is the defendant's initial burden to prove that the statement is the product of custodial interrogation. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). "[B]eing the 'focus' of an investigation does not necessarily render a person 'in custody' for purposes of receiving *Miranda* warnings or those required under article 38.22 of the Code of Criminal Procedure." *Id.* at 293.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

There are four general situations that may constitute custody for purposes of *Miranda* and Article 38.22: (1) the accused is physically deprived of his freedom of action in a significant way; (2) a police officer tells the accused he is not free to leave; (3) police officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) there is probable cause to arrest the accused, and police officers do not tell him that he is free to leave. *Id.* at 294. The fourth category applies only when the officer's knowledge of probable cause is communicated to the suspect or by the suspect to the officer; even then, custody is established only "if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Id.* at 294–95 n.48.

Circumstances relevant to determine whether a person is "in custody" include (1) the location where the person is questioned, (2) the duration of the questioning, (3) the statements that are made during the interview, (4) the presence or absence of physical restraints when the person is questioned, and (5) whether the person is released at the end of the interview. *Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012). Appellant contends that he was in custody during the interview because the fourth and third situations described above were established.

The trial court entered the following pertinent findings of fact and conclusions of law after the suppression hearing: (1) Appellant was not under arrest at the time he made the recorded statement; (2) the recorded statement was not the result of a custodial interrogation; (3) no coercive, hostile, aggressive, or threatening behavior was directed toward Appellant while or before he gave the recorded statement, and no promises were made to him; (4) Appellant voluntarily made the recorded statement; and (5) after the statement was concluded, Appellant

4

was free to and did leave the offices of the interviewing detective at the Midland Police Department.

At the hearing on the motion to suppress, Detective Georvarsey Mitchell testified that Esikhati told him that Appellant stole funds from him. After speaking with Esikhati, Detective Mitchell called and asked Appellant to meet with him at his office. Appellant obliged. After arriving at Detective Mitchell's office, Appellant and Detective Mitchell had a conversation about the incident. They discussed whether Appellant committed the offense. Appellant initially denied it but, eventually, admitted to the act. Detective Mitchell then read Appellant his *Miranda* rights and asked Appellant if he would like to give a statement. Appellant answered affirmatively, and Detective Mitchell made an audio recording of the statement. This audio recording of the statement is what Appellant sought to suppress.

During the hearing, Detective Mitchell also testified that Appellant was not arrested at any point before, during, or immediately after the interview. Appellant came to the interview voluntarily. He was not placed in handcuffs and was free to leave at any time. On the recording, Appellant acknowledges that he was there of his own free will.

Here, the trial court determined that the statement was not the product of a custodial interrogation. The record from the suppression hearing supports the trial court's findings. We defer to this determination because it hinges on an evaluation of Detective Mitchell's credibility and the credibility and demeanor of Appellant on the audio recording. *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006). Here, the record does not reflect circumstances under which we can reach a conclusion that a reasonable person would believe that he was under restraint to the degree associated with an arrest or that his freedom of movement

was significantly restricted. Therefore, we do not agree with Appellant's assertions that the facts demonstrate that he was in custody.

As we provided above, voluntary statements that are not the result of custodial interrogations are exempt from the *Miranda* requirements. *State of Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980) ("It is clear therefore that the special procedural safeguards outlined in *Miranda* are required . . . where a suspect in custody is subjected to interrogation."). As such, we need not reach a determination of whether Detective Mitchell employed a two-step interrogation technique in a deliberate, calculated way to undermine Appellant's *Miranda* warnings. Accordingly, the trial court did not abuse its discretion when it denied the motion to suppress. Appellant's first issue is overruled.

In his second issue, Appellant contends that the trial court erred when it denied Appellant's request for the inclusion of jury instructions under Articles 38.22 and 38.23 of the Code of Criminal. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.22, § 6; 38.23 (West 2005).

In analyzing a complaint of jury charge error, we first determine whether error existed in the charge. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). If error existed, we then determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When a defendant properly preserves error, reversal is required if the error caused some harm. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). When the defendant does not present a proposed jury instruction at trial, any potential error in the charge is reviewed only for egregious harm. *Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008).

Article 38.22, section 6, provides for a general instruction by which the jury is asked to determine whether a defendant's statement was made under voluntary

conditions. *Id.* at 173. This section applies only "where a question is raised as to the voluntariness of a statement of an accused." Crim. Proc. art. 38.22, § 6. The Texas Court of Criminal Appeals has held that a "question is raised" when the trial court is notified by the parties or raises on its own an issue about the voluntariness of a statement. *Oursbourn*, 259 S.W.3d at 175. Once a question is raised, the trial court must hold a hearing outside the presence of the jury to decide whether the defendant's statement was voluntary. *Id.* at 175. The trial court must make written findings of fact and conclusions of law in support of its ruling. *Id.* at 175 n.55. If the trial court finds that the statement was voluntary, it will be admitted, and the defendant may offer evidence before the jury that the statement was not, in fact, voluntary. *Id.* at 175. If the defendant does so, the trial court must give the jury a voluntariness instruction. *Id.*

Article 38.22, section 6, requires that voluntariness be litigated in some manner before a jury. *Id.* at 176. Although a factual dispute is not necessary to induce the requirement of a jury instruction, "'[s]ome evidence must have been presented to the jury that the defendant's confession was not given voluntarily.'" *Id.* at 176 n.59 (alteration in original) (quoting *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007)). When there is no evidence before the jury to raise the issue of whether the statement was voluntarily given, there is no error when a trial court refuses to include the instruction. *Vasquez*, 225 S.W.3d at 545.

"The determination of whether a confession is voluntary is based on an examination of the totality of circumstances surrounding its acquisition." *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000) (quoting *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995)). A statement may be involuntary "if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *State v. Terrazas*, 4 S.W.3d 720, 723 (Tex.

Crim. App. 1999) (quoting *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995)). The ultimate question for a court to answer when it determines voluntariness is "whether the suspect's will was overborne" by the conduct of the state actor. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). Some relevant circumstances include the length of the detention and interrogation, whether the defendant was permitted access to his family or attorney, and the presence or absence of physical brutality. *Gomes v. State*, 9 S.W.3d 373, 377 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Armstrong v. State*, 718 S.W.2d 686 (Tex. Crim. App. 1985), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)). A defendant's characteristics and status, as well as the conduct of the police, are also important concerns. *Haynes v. Washington*, 373 U.S. 503, 517 (1963).

In our review of the record, we find no evidence upon which a reasonable jury could conclude that Appellant's statement was not voluntary. The evidence before the jury in the guilt/innocence phase of the trial consisted of Esikhati's testimony, Detective Mitchell's testimony, and Appellant's recorded statement. Detective Mitchell's testimony at trial generally tracked the testimony he gave during the hearing on the motion to suppress. Nothing in his description of the interview or the events immediately preceding it raised a question of the voluntariness of Appellant's statement. Nor was a question of voluntariness raised in the recorded statement played to the jury. As we noted in our discussion of Appellant's first issue, during the recorded statement, Appellant stated that he was there of his own free will. Because the record is devoid of any evidence before the jury that would raise the issue of whether the statement was voluntarily given, the trial court did not err when it refused to include the Article 38.22, section 6 instruction.

In the second part of Appellant's argument under the second issue, he contends that the trial court erred when it denied his request for an instruction under Article 38.23. When a fact question arises at trial regarding how evidence was obtained, Article 38.23 requires the trial court to instruct the jury to disregard the evidence if the jury believes that the evidence was obtained in violation of the Constitution or laws of the United States or of Texas. *See* CRIM. PROC. art. 38.23. There are three requirements that a defendant must meet before he is entitled to the submission of a jury instruction to disregard evidence: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007).

It is at least on the third requirement under *Madden* that Appellant's argument fails. Appellant contends the following factual issues warranted an Article 38.23 instruction: (1) Esikhati testified that the stolen money was in envelopes, whereas Appellant said in his statement that the money was in a bag; (2) Esikhati testified that $4,300 was stolen, while Appellant said in his statement that the amount was approximately $3,000; and (3) Esikhati testified that the stolen money was in the desk drawer, but Appellant indicated in his statement that the money was on top of the desk. Appellant argues that these facts are material because they indicate Detective Mitchell was questioning Appellant with inaccurate facts, thereby seeking an inaccurate confession. We disagree. "The defendant must offer evidence that, if credited, would create a reasonable doubt as to a specific factual matter essential to the voluntariness of the statement." *Oursbourn*, 259 S.W.3d at 177. Whether the jury believed Esikhati's testimony or Appellant's statement as to the factual differences argued by Appellant has no bearing on whether Appellant's statement was voluntary. *See id.* at 178 (citing

9

*Colorado v. Connelly*, 479 U.S. 157, 164 & n.1 (1986), and *Terrazas*, 4 S.W.3d at 727) ("Normally, 'specific' exclusionary-rule instructions concerning the making of a confession are warranted only where an officer uses inherently coercive practices like those set out in *Connelly*.").

Furthermore, the proposition that Detective Mitchell was intentionally questioning Appellant with inaccurate facts is not supported by the evidence. The only evidence as to Detective Mitchell's mental state concerning his questioning about those facts is his testimony that "[he] was told that [the missing amount] was $3,000" in response to Appellant's question asking if he had contacted the victim or anyone else at the academy to check those facts. Even if there was such evidence, "it is well established that lying about the state of the evidence is not the sort of 'overreaching' that implicates the Due Process Clause, as long as the subterfuge used is not one likely to produce an untrue statement." *Id.* at 182 Given our previous holding that the factual differences argued by Appellant have no bearing on whether Appellant's statement was voluntary and the lack of evidence of any intentionality on the part of Detective Mitchell, we cannot say that the alleged deception interjected the type of extrinsic considerations that would overcome Appellant's "'will by distorting an otherwise rational choice of whether to confess or remain silent.'" *Id.* at 182 n.88.

Appellant also argues that a contested factual issue existed that would trigger an Article 38.23 instruction because "the defense, believing [Detective] Mitchell told [Appellant] he would release [Appellant] if he confessed, contested the reasoning why [Detective] Mitchell eventually released [Appellant] after obtaining his confession." However, there was no evidence presented at trial to support this contention; rather, the only support for this contention was a question posed by Appellant's counsel during his cross-examination of Detective Mitchell. In *Oursbourn*, the Court of Criminal Appeals stated that the triggering "factual

dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument." *Id.* at 177 (citing *Madden*, 242 S.W.3d at 513 nn. 22–23). Thus, as Appellant's argument is not based on evidence, it is not persuasive.

Finally, Appellant argues that "the content and circumstances of the unrecorded, unwarned interview brings into dispute the 'question-first, warn-later' tactics" that Appellant alleged in his first issue. Appellant does not elaborate on or point to any material or specific fact disputes in support of this argument. As discussed above, the triggering factual dispute can only be raised by affirmative evidence. *Id.* Although Appellant may speculate at trial about what may or may not have happened, the record does not support his allegation. Because the requirements necessary to trigger an instruction under Article 38.23 were not met, we hold that the trial court did not err when it denied Appellant's request for an Article 38.23 instruction.

Because we have determined that the trial court did not err when it refused to instruct the jury under Articles 38.22 and 38.23, Appellant's second issue is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


August 30, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

11