

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-14-00386-CR
_____

VINCENT OLIVA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2012-435,021, Honorable Jim Bob Darnell, Presiding

September 30, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Vincent Oliva appeals his conviction for robbery and contends that 1) the trial court erred in denying his motion to suppress the evidence, 2) the trial court erred in refusing to allow him to question specific potential jurors about bias, and 3) the evidence was insufficient to prove his identity. We affirm the judgment.

*Background*

On May 9, 2012, at around 4:00 a.m., Tara Thomas and Olivia Lewis, two Texas Tech University track team members, were preparing to leave for the airport to attend a track meet. Tara was at her car when she was accosted by two men wearing bandanas

and hats and carrying guns. One of the men, who wore a purple TCU hoodie sweatshirt, pointed his gun at Tara and robbed her. He took her cell phone and a coin purse with Olivia's social security card and birth certificate. Olivia exited her apartment and also encountered the men who subsequently ran away.

Later, Tara's mother called her cell phone, and a man answered it. He claimed to have bought the phone from someone else. She told him he should turn the phone into the police. He later called Tara's mother and offered to sell her the phone for $300. The police were notified, and a sting operation was set up. Appellant arrived at the rendezvous point at the designated time and offered the phone to the undercover officer. That resulted in appellant's arrest.

Appellant's girlfriend, Shamyra, was present at his arrest and subsequently took various officers to the apartment where appellant resided. She unlocked the door, and the group immediately encountered another person (Mimi) inside the abode. When the police asked that person if they could enter, she replied in the affirmative. So too did she give them consent to search the apartment. Yet, even before receiving that consent but after being invited to enter, at least one officer saw a purple hoodie with "TCU" laying atop or adjacent to furniture in the living room. That garment was seized and later shown to the victim of the robbery. The latter identified it as one like that worn by the assailant. Tara also recognized appellant's voice from a recording of a conversation between appellant and the investigating officer.

*Motion to Suppress*

Appellant contends that the warrantless search of the apartment wherein the hoodie was discovered was illegal and, therefore, the evidence found at the abode and his subsequent comments should have been suppressed. The issue is overruled.

2

First, we review a trial court's ruling on a motion to suppress under the standard discussed in *Meekins v. State*, 340 S.W.3d 454, 460-61 (Tex. Crim. App. 2011) and *Valtierra v. State*, 310 S.W.3d 442, 447-48 (Tex. Crim. App. 2010). The parties are referred to those opinions for consideration of the standard.

Second, a warrantless search of a home is presumptively unreasonable. *Turrubiate v. State,* 399 S.W.3d 147, 151 (Tex. Crim. App. 2013); *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). However, the rule is subject to the exception of voluntary consent. *Meekins v. State*, 340 S.W.3d at 458. That is, obtaining voluntary consent to search from individuals with authority to consent may replace the need for obtaining a warrant. Furthermore, one with authority to consent need not be the suspect or detainee. For instance, consent also may be given by a third party who possesses common authority over the thing to be searched. *Hubert v. State*, 312 S.W.3d 554, 560-61 (Tex. Crim. App. 2010); *Patrick v. State*, 906 S.W.2d 481, 490 (Tex. Crim. App. 1995). That is, a third party may consent if that person has actual or common authority over the place or thing to be searched. *Hubert v. State*, 312 S.W.3d at 560-61. And, while property interests are relevant to this determination, "the commonality of authority to consent is not determined solely by the law of property." *Id.* Instead, common authority is illustrated through evidence of mutual use of the property by persons generally having joint access or control over the area to be searched. *Id.*

We further note that actual authority is not necessarily a prerequisite for a valid consensual search. *Id* at 561. For instance, circumstances permitting an officer to reasonably, though erroneously, believe that a person providing consent has actual

3

authority over the locale may also legitimize the search. *Id.* And, at the very least, that is the situation here.[1]

Mimi executed a written consent form at bar; so too did she invite the officers in the apartment. Though she may not have signed the apartment lease, she was within the abode when Shamyra unlocked the door for the officers. Mimi also 1) told the officers that it was her apartment, 2) stated that appellant had been staying there for two months, 3) showed the investigating officer her bedroom which had clothes lying about, and 4) told the officer that appellant and Shamyra stayed in the living room. This evidence was sufficient to permit an officer to reasonably believe that Mimi had actual authority over the locale and authority to consent to its search. Thus, the warrantless search was not illegal given the consent afforded by Mimi to the investigating officer.[2]

*Voir Dire*

Next, appellant argues that he was precluded from individually questioning potential jurors as to matters (that is, bias) that might have permitted a challenge for cause. The refusal to allow him that opportunity purportedly evinced denied him "a fair trial in violation of his Sixth and Fourteenth amendment rights." We overrule the issue.

At the end of voir dire, counsel for appellant proposed the following objection:

---

[1] In *Hubert*, the Court of Criminal Appeals held that "whether a third party had actual authority to consent to a search of another's property and whether an officer was reasonable in finding that a third party had apparent authority to consent are mixed questions of law and fact which reviewing courts should examine *de novo. Hubert v. State*, 312 S.W.3d 554, 559-60 (Tex. Crim. App. 2010). And, when the trial court does not enter findings of fact, a reviewing court views the evidence in a light most favorable to the trial court's rulings and assumes that the trial court resolved any issues of historical fact or credibility consistently with its ultimate ruling. *Id.*

[2] Arguably, the officers being allowed entrance into the apartment via Shamyra unlocking the door for them with a key and Mimi permitting them to enter provided additional basis to uphold the search. Having gained permission to enter, the officers immediately saw the hoodie atop furniture in a common area visible from where they stood upon entering. The plain view doctrine may have afforded them authority to seize the garment at that point even if Mimi had not given them written consent to search the remainder of the abode. *See State v. Betts*, 397 S.W.3d 198, 206 (Tex. Crim. App. 2013) (stating that officers who are legitimately within a locale may seize evidence of criminal activity found in plain view and without a warrant).

4

. . . for the record the Defendant would object and except to the Court's refusal to call up to the Bench for further discussion with regard to possible challenges for cause panel members No. 31, 32, 50, 57, I'll mention 60 even though he's below the cut line. Judge, it's the Defense's position that sufficient matters were raised in jury selection to warrant examination of these individuals for possible bias under Code of Criminal Procedure Article 36, and that the Court's failure to do so is the functional equivalent of incorrect denial of a challenge for cause, broadly speaking, and also violates this Defendant's right to an impartial jury under the 6th and 14th Amendments of the U.S. Constitution.

Before the jury was sworn, appellant's counsel also said:

For the record with regard to the Court's view that it was not necessary to call various panel members to the Bench earlier, I would ask the record to reflect that the Defendant used all it's peremptory challenges, and we would say that there was an objectionable juror identified -- just give me one second, Judge. Okay. Pardon me, your Honor. That being Tamara Hogan and then -- No. 46. And we would have struck Ms. Hogan if we had the additional peremptory.  That being the remainder of the Defense's objections to what occurred earlier, Judge.

The objections were overruled.

As illustrated by the foregoing objection, appellant simply informed the trial court of a particular area about which he wanted to question various jurors.  No doubt, the subject of juror bias is a relevant topic of inquiry during voir dire.  Yet, to preserve error regarding the refusal to permit a litigant to propound questions during that stage of the proceeding, it is not enough to simply inform the trial court of the general subject on which he seeks to interrogate venire members.  *Williams v. State*, No. 09-14-00217-CR, 2015 Tex. App. LEXIS 7268, at *14-15 (Tex. App.—Beaumont July 15, 2015, no pet. h.) (mem. op.); *Paul v. State*, No. 05-12-00551-CR, 2014 Tex. App. LEXIS 3145, at *4-5 (Tex. App.—Dallas March 20, 2014, pet. ref'd) (mem. op.).  Indeed, for us to be able to assess whether the inquiry of appellant was proper, we must have of record an appropriately phrased and relevant question.  *Id.*, *accord, Caldwell v. State*, 818 S.W.2d 790, 794 (Tex. Crim. App. 1991) (stating that "it is impossible for this Court to determine

5

whether the inquiry of Appellant would have been proper--i.e., both appropriately phrased and relevant"). So, preserving error requires the appellant to show "that he was prevented from asking *particular* questions that were proper." *Sells v. State*, 121 S.W.3d 748, 756 (Tex. Crim. App. 2003) (emphasis in original). "That the trial court generally disapproved of an area of inquiry from which proper questions could have been formulated is not enough because the trial court might have allowed the proper question had it been submitted for the court's consideration." *Id.*

Here, appellant did not inform the trial court of any particular question he sought to propound on the topic of juror bias. Consequently, he did not preserve his complaint for review. This result seems especially appropriate at bar since the trial court expressed concern over the wording of the original questions posed to the general venire. Again, only proper questioning must occur; the trial court need not permit improper questioning even on a relevant topic.

*Sufficiency of the Evidence*

Appellant also challenges the sufficiency of the evidence to support his conviction. In particular, he contends that it was insufficient to prove, beyond reasonable doubt, that he was the person who committed the robbery. We overrule the issue.

We review challenges to the sufficiency of the evidence under the standard discussed in *Murray v. State*, 457 S.W.3d 446, 448-49 (Tex. Crim. App. 2015) and refer the parties to it. In applying that standard at bar, we uncovered evidence of record indicating that one of the assailants wore a purple hoodie with white on the shoulders and containing the letters "TCU" on it. Such a hoodie was found not only in the apartment whereat appellant lived but also in the area of the apartment where he slept.

So too did appellant have the cell phone taken during the robbery. The robbery victim also recognized appellant's "country" voice captured in a recording of an interview with the investigating officer. To that we add the testimony of appellant's girlfriend, Shamyra. She informed the factfinder of a conversation she had with appellant wherein he represented that he robbed two females of a cellphone. This was some evidence upon which a rational factfinder could conclude, beyond reasonable doubt, that appellant was the person who committed the robbery charged in the indictment. While other evidence may have contradicted that determination, the factfinder was free to determine what evidence to credit, and we defer to its decision. *Murray v. State*, 457 S.W.3d at 448-49 (stating that the standard of review "tasks the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts" and that "[w]hen the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination").

Accordingly, the judgment is affirmed.


Brian Quinn
Chief Justice


Do not publish.